**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| WILLIAM W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:22CV473 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff, William W., brought this action pro se pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 11 (cited herein as "Tr. __")), Plaintiff has moved for judgment (Docket Entry 14 (Plaintiff's "Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security or Remanding the Cause for a Rehearing" (capitalization added)), and the Commissioner has submitted a dispositive brief in accordance with Rule 5 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) (Docket Entry 17 (Commissioner's Brief); <u>see also</u> Docket Entries 21-23 (Plaintiff's Reply and attachments); Docket Entry 24 (Commissioner's Suggestion

of Supplemental Authority)). For the reasons that follow, the Court will enter judgment for the Commissioner.[1]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 202-18), alleging a disability onset date of June 27, 2019 (see Tr. 202, 205). Upon denial of that application initially (Tr. 75-84, 97-105) and on reconsideration (Tr. 85-94, 107-14), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 115-17). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 39-74.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 7-23.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 195-201, 362-65), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2024.

2. [Plaintiff] has not engaged in substantial gainful activity since June 27, 2019, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: [d]egenerative disc disease cervical, thoracic and lumbar

---

[1] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 15 at 1.)

2

spine; hypertension; visual disturbance; obstructive airway disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except frequent climbing of ramps and stairs, but only occasional climbing of stepladders up to 4 vertical feet in height, with no climbing of higher ladders or of ropes and scaffolds of any height – frequent kneeling and crouching – occasional stooping and crawling – frequent overhead reaching bilaterally – occasional exposure to vibration, atmospheric conditions, and high, exposed places – no operation of motor vehicles or heavy equipment required as part of the assigned work – ability to wear corrective prescription lenses as needed when performing the assigned work.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from June 27, 2019, through the date of this decision.

(Tr. 12-23 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the

4

case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u>

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantially identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

## B. Assignments of Error

After affording Plaintiff's Complaint (Docket Entry 2), Motion for Judgment (Docket Entry 14), and Reply (Docket Entries 21-23) the liberal construction due such pro se filings, <u>see</u> <u>Hill v. Braxton</u>, 277 F.3d 701, 707 (4th Cir. 2002) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)), the Court will construe Plaintiff's assignments of error as the following:

1) the ALJ "use[d] false documation [sic] to determined [sic] outcome" by "us[ing Plaintiff's] answers to questions in other spots then [sic] where [he] said them" (Docket Entry 2 at 2);

2) the ALJ erred by "assum[ing] that[,] just because [] Plaintiff [stated on a Function Report that he] got along with others[, ] he was also interacting with others on a social level" (Docket Entry 14 at 1);

_____

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

3) the ALJ failed to "take[] into consideration" Plaintiff's allegation that "[t]he [n]eurosurgeon [] Plaintiff saw in July 2021 . . . falsified the documentation" from the medical visit (id. at 2);

4) the ALJ "did not take the date of [Plaintiff's] injury into consideration" when assessing the objective findings in "the before injury appointment [on June 4, 2019,] and after injury appointments [on July 2 and 11, 2019]" (id.);

5) the ALJ erred by "stat[ing] that [ P]laintiff['s] records fail[ed] to support the level of limitations alleged, b[ecause] on June 23, 2021[, ] Plaintiff was found to be disabled . . . by [] a state hearing officer when [] Plaintiff appealed his state Medicaid denial" (id.; see also Docket Entry 2 at 3 ("[Plaintiff] ha[s] a written statement from a[n ALJ] in Raleigh NC that states [Plaintiff is] disabled by Social Security law[.]"));

6) "there is substantial proof of Plaintiff[']s use of the cane and walker are [sic] needed" (Docket Entry 14 at 2; see also Docket Entry 21 at 3 ("The ALJ committed reversible error by failing to properly consider [Plaintiff]'s assistive device."));

7) "Plaintiff feels that he has been discriminated against due to th[e] statement that [the ALJ] made" that "Plaintiff was young for [S]ocial [S]ecurity benefits" (Docket Entry 14 at 2);

8) Plaintiff asks the Court to "consider[]" new evidence consisting of "prescriptions for [his] walker/cane, the doctor's

9

notes for walker/cane, doctor notes that has [sic] kept [him] out of work since 2021 and surgery notes from [his T]arlov cyst surgery" (Docket Entry 21 at 1; see also Docket Entries 22, 23 (new evidence));

9) "[t]he ALJ's decisional findings do not match the assigned RFC and this constitutes error under [Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ('SSR 96-8p')]" (Docket Entry 21 at 2); and

10) "[t]he ALJ failed to comply with SSR 96-8p in assessing [Plaintiff]'s RFC because [the ALJ] failed to conduct the required 'function-by-function' assessment" (id. at 3).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (See Docket Entry 17 at 5-23.)

### 1. Hearing Transcript

In Plaintiff's first issue on review, he faults the ALJ for "us[ing Plaintiff's] answers to questions in other spots then [sic] where [he] said them." (Docket Entry 2 at 2.) In that regard, Plaintiff notes that "[he has] asked for the [v]oice [r]ecording of the [h]earing[.]" (Id.) Plaintiff's unsupported assertions do not establish error by the ALJ, because Plaintiff has failed to identify a single instance where the ALJ misrepresented Plaintiff's testimony or used such testimony out of its proper context. (See Docket Entries 2, 14, 21.) Moreover, the Chief of the Court Case Preparation and Review Branch 2 in the Office of Appellate

Operations of the SSA "certifie[d] that the documents [in the administrative transcript] constitute[d] a full and accurate transcript of the entire record of proceedings relating to [Plaintiff's] case" (Docket Entry 11 at 1), and a Transcriber and Proofreader each "certif[ied] that [the hearing transcript wa]s a true and complete transcription of the testimony recorded at the hearing in the case of [Plaintiff] held before [the ALJ]" (Tr. 74). Such circumstances preclude relief on this assignment of error. See Briggs v. Colvin, 634 F. App'x 621, 622 (9th Cir. 2016) (rejecting the plaintiff's unsupported claim that ALJ altered hearing transcript, noting that "[b]oth the hearing transcript and the entire administrative record were certified as accurate and complete," as well as that "[the plaintiff]'s bare assertion that the hearing transcript was altered is not sufficient to undercut the presumptive accuracy of that record" (internal citation omitted)); Sapp v. Saul, No. 1:19CV2213, 2021 WL 805420, at *3 (D.S.C. Mar. 2, 2021) (unpublished) ("Unsupported allegations of inaccuracy are not a proper basis for remand. . . . The hearing transcript submitted with [the p]laintiff's administrative record is duly certified and signed by [a t]ranscriber[] and [a p]roofreader. There is no appearance that any portions are missing and no evidence to suggest the same." (internal parenthetical citation omitted)).

## 2. Social Interaction

In Plaintiff's second assignment of error, he contends that the ALJ erred by "assum[ing] that[,] just because [] Plaintiff [stated on a Function Report that he] got along with others[, ] he was also interacting with others on a social level." (Docket Entry 14 at 1.) In further support of that argument, Plaintiff notes that, "[w]hen social activities were denied [by Plaintiff on the Function Report], [the ALJ ] asked Plaintiff [on the Function Report] if he got along with others and [his] answer was he had no problem," but that "[his] answer [on the Function Report] was based on his past interactions before he became disabled." (Id.)[6] Although Plaintiff's argument lacks clarity, he appears to challenge the ALJ's finding at step two of the SEP that Plaintiff's mental impairments caused only mild limitation in social interaction:

> In [interacting with others], [Plaintiff] has mild limitation. In [Plaintiff]'s [F]unction [R]eport, there were denials of any social activities. However, it was noted that he did not have any problems getting along with others. Accordingly, the evidence supports no more than mild limitation to functioning in this domain.

(Tr. 14 (emphasis added).)

---

[6] Although Plaintiff indicates that "[the ALJ] asked Plaintiff if he got along with others" (Docket Entry 14 at 1 (emphasis added)), Plaintiff cites to Exhibit 5E, which contains a Function Report (see Tr. 271-78), that reflects Plaintiff's answer to the question "Do you have any problems getting along with family, friends, neighbors, or others?" as "No" (Tr. 276). Moreover, the hearing transcript reflects neither any questions by the ALJ nor any testimony by Plaintiff regarding his ability to get along with others. (See Tr. 39-74.)

As an initial matter, the ALJ's finding that Plaintiff had mild limitation in social interaction (see Tr. 14) did not "assume[]" that Plaintiff "was [] interacting with others on a social level" (Docket Entry 14 at 1); rather, the ALJ acknowledged Plaintiff's "denial[] of any social activities" (Tr. 14 (emphasis added)), but noted that Plaintiff did not report problems getting along with others (see id.). The ALJ's balancing of those two contrasting considerations, i.e., a denial of social activities, but an admitted ability to get along with others, supported his overall rating of mild limitation in social interaction.

Furthermore, Plaintiff's attempt to recast his answer to the Function Report's question about his ability to get along with others as referring to his social abilities prior to the alleged onset of disability falls short. Plaintiff's other answers on the Function Report make clear he knew how to contrast his abilities prior to and after the alleged onset of disability. (See, e.g., Tr. 276 (noting that Plaintiff "used to go out with [his wife] and friends doing [e]verything and now he just stay[s] home").) Moreover, Plaintiff neither alleged problems getting along with others on his Disability Report (see Tr. 247 (listing "[a]sthma," "[b]ack," "[f]eet," "[u]lcers," "[e]ye problems," "[h]ypertension," and "[h]igh cholesterol" as "all of the physical or mental conditions (including emotional or learning problems that limit[ed]

13

his ability to work" (emphasis added)) nor testified to such problems at the hearing (<u>see</u> Tr. 39-74).

Under such circumstances, Plaintiff has not shown that the ALJ erred in evaluating Plaintiff's limitation in social interaction.

### 3. Neurosurgeon's July 2021 Report

Plaintiff's third issue on review maintains that the ALJ erred by failing to "take[] into consideration" Plaintiff's allegation that "[t]he [n]eurosurgeon [] Plaintiff saw in July 2021 . . . falsified the documentation" from the medical visit. (Docket Entry 14 at 2; <u>see also</u> Docket Entry 2 at 2 (alleging that "[the ALJ ] use[d] false documation [sic] to determined [sic] outcome").)  In support of that contention, Plaintiff maintains as follows:

> The [n]eurosurgeon [] Plaintiff saw in July 2021 states in the medical notes that he did an exam on [] Plaintiff and he had no motor weakness.  Plaintiff's wife was present with [] Plaintiff at said appointment.  Plaintiff states [the n]eurosurgeon lifted one [of Plaintiff's] legs and it began to shake.  [The n]eurosurgeon then stopped the examination.  [The n]eurosurgeon falsified the documentation and [] Plaintiff told [the ALJ] as much.  It was not taken into consideration.  Plaintiff has evidence to show why he was supposed to be seen at this appointment and evidence of what he was actually seen for and why.

(Docket Entry 14 at 2.)  For the reasons provided more fully below, those contentions lack merit.

At the hearing, the following exchange took place between the ALJ and Plaintiff regarding his visit with the neurosurgeon in July 2021:

14

[ALJ:]                . . . I saw where you – it looks like you
                      saw a neurosurgeon in North Carolina in
                      July of [2021] for your back.  Do you
                      recall that visit?

[PLAINTIFF:]   Yes.

[ALJ:]                And did that surgeon recommend surgery or
                      any kind of, you know, interventional
                      procedure for your back or your hips?

[PLAINTIFF:]   No.  Well, I was already seeing the other
                      doctors and stuff.  He's just letting
                      them take care of it.

[ALJ:]                Okay.  So you just went to that doctor
                      for the one visit?

[PLAINTIFF:]   Yeah. . . .  To be quite honest with you,
                      I went to my pain management doctor the
                      day before him and my pain management
                      doctor was wanting to give me injections
                      in my spine and I told him I had done
                      about 50 of them and . . . none of them
                      was helping me.  So he wrote a letter out
                      to the [neurosurgeon] and told him if he
                      gave me any kind of injections, [the pain
                      management doctor] would think twice
                      about giving me my medications. . . .  And
                      so the [neurosurgeon] didn't do anything,
                      but talk to me for a minute.  He actually
                      never even checked me, but he raised my
                      leg up a little bit and I started having
                      muscle spasms and so he stopped putting
                      them in.  He didn't do anything
                      else. . . .

[ALJ:]                [T]hese symptoms that you mention with
                      your bowel and your bladder, you know, I
                      was just looking at the – at that July
                      this year, you know, neurosurgery
                      evaluation that you had at UNC.  And
                      there, they indicated that, you know,
                      that you had denied any kind of weakness
                      or bowel or bladder problems or what's
                      called saddle anesthesia, you know, kind
                      of numbness in between your legs and kind
                      of, you know, that kind of area. . . .

                                      15

| [PLAINTIFF:] | Yeah. Like I told you, he did not even check me. He didn't do anything and I didn't deny anything, my wife was with me. She actually had to help me up there. He talked to me for just a second and he didn't ask me any of that stuff. And he had me to sit on the bed. He raised my right leg up slightly and I started – it started jumping really, really bad, so he automatically let loose of it and that's about all he did. But to be honest with you, and if my wife was here at the moment, she could swear on the Bible on it and whatever she would, but he didn't do anything. |
|---|---|
| [ALJ:] | All right. So if he's got a note that says that he performed an exam, then you're saying that's incorrect as far as you recall? |
| [PLAINTIFF:] | Yes, sir, that exam, I would throw that out. |
| [ALJ:] | Okay. And if he also put in his note from that exam that again, that you denied any motor weakness or, you know, problems with your walking or problems with your bowels, or your bladder, or saddle anesthesia you would disagree with that? |
| [PLAINTIFF:} | Yes, sir. |
| [ALJ:] | Okay, then. All right. Sir, those are all the questions that I have for you . . . . |

(Tr. 59-64.) In the ALJ's decision, he noted that the neurosurgeon's "notes indicat[ed] no motor weakness, no gait/coordination disturbance, and no loss of bowel and bladder control." (Tr. 18.)

16

As made clear by the above-quoted exchange, and contrary to Plaintiff's contention (see Docket Entry 14 at 2), the ALJ "t[ook] into consideration" (id.) Plaintiff's assertion that the neurosurgeon falsified his examination report. Although Plaintiff may disagree with the ALJ's apparent decision to credit the neurosurgeon's report over Plaintiff's testimony, he has not provided the Court with a basis for disturbing the ALJ's resolution of that evidentiary conflict. See Craig, 76 F.3d at 589 (holding that federal courts should "not undertake to re-weigh conflicting evidence"); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993))); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979))).

Accordingly, Plaintiff has not demonstrated error with respect to the ALJ's consideration of the neurosurgeon's examination report.

### 4. Pre-Injury Evidence

Next, Plaintiff contends that the ALJ "did not take the date of [Plaintiff's] injury into consideration" when assessing the objective findings in "the before injury appointment [on June 4,

17

2019,] and after injury appointments [on July 2 and 11, 2019]."
(Docket Entry 14 at 2.)  According to Plaintiff, "[t]he date of
th[e June 4, 2019,] appointment was before his injury so therefore
his exam would be normal with normal gait," whereas the
appointments on July 2 and 11, 2019, "w[ere] after his injury so
the exam outcome changed/would be different."  (Id.)  Plaintiff's
argument appears to take issue with the following portion of the
ALJ's narrative discussion of the evidence:

> Physical examinations throughout the record have been
> variable but generally do not support the level of
> limitation [Plaintiff] has alleged.  For instance, just
> before his alleged onset date, he was seen at First
> Health on June 4, 2019, and had normal range of motion,
> no tenderness, normal coordination, and normal gait.  On
> the other hand, on July 2, he had tenderness, pain and
> spasm to his lumbar and cervical spine but there was
> normal range of motion, normal strength, negative
> straight leg raising, and normal gait.  Several days
> later on July 11, 2019, he was seen for an annual exam
> and there was spinal tenderness and he had difficulty
> bending.

(Tr. 17 (emphasis added) (internal parenthetical citation
omitted).)

Plaintiff's argument glosses over the language emphasized
above, which makes clear the ALJ recognized that the June 4, 2019,
appointment pre-dated Plaintiff's alleged onset date (also the date
of his on-the-job injury).  (See id.; see also Tr. 16 ("[Plaintiff]
has been treated for back and neck pain, which began after a work
accident (most recent accident in June 2019)." (emphasis added)
(internal parenthetical citation omitted).)  Furthermore, the ALJ's

18

acknowledgement of tenderness, spasm, and difficulty bending <u>after</u> his injury, but normal findings regarding Plaintiff's range of motion and gait <u>both before and after his injury</u> supported the ALJ's finding that "[p]hysical examinations throughout the record ha[d] been <u>variable</u> but generally d[id] not support the level of limitation [Plaintiff] ha[d] alleged." (Tr. 17 (emphasis added).)

Under such circumstances, Plaintiff has not shown that the ALJ erred in his consideration of the treatment records in question.

## 5. Medicaid Disability Decision

Plaintiff's fifth issue on review asserts that the ALJ erred by "stat[ing] that [ P]laintiff['] s records fail[ed] to support the level of limitations alleged, b[ecause] on June 23, 2021[, ] Plaintiff was found to be disabled . . . by [] a state hearing officer when [] Plaintiff appealed his state Medicaid denial." (Docket Entry 14 at 2; <u>see also</u> Docket Entry 2 at 3 ("[Plaintiff] ha[s] a written statement from a[n ALJ] in Raleigh NC that states [Plaintiff is] disabled by Social Security law[.]").) According to Plaintiff:

> In order to be eligible for Aid to the Disabled Medical Assistance, [Plaintiff] must be found disabled as defined by Federal Law set forth in 20 CFR 404 and 20 CFR 416. The state hearings officer had the exact same evidence as [the ALJ]. The evidence of the appeal was given to Plaintiff's lawyer before his hearing and the lawyer did not present it to the [ALJ]. Plaintiff does not know the reason for this action.

(Docket Entry 14 at 2.) Those contentions miss the mark.

19

Applicable to benefits claims filed before March 27, 2017, Social Security Ruling 06-03p, <u>Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939 (Aug. 9, 2006) ("SSR 06-03p") (rescinded eff. Mar. 27, 2017, <u>see</u> 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017)), provided that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered," <u>id.</u> at *6, but such decisions did "not bind[]" the SSA, <u>see</u> 20 C.F.R. § 404.1504 (version eff. until Mar. 26, 2017). The United States Court of Appeals for the Fourth Circuit, in interpreting those provisions, held that, "in order to demonstrate that it is 'appropriate' to accord less than 'substantial weight' to a[ state agency] disability decision, an ALJ must give 'persuasive, specific, valid reasons for doing so that are supported by the record.'" <u>Woods v. Berryhill</u>, 888 F.3d 686, 692 (4th Cir. 2018) (quoting <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002)).

For benefits claims filed on or after March 27, 2017 (such as Plaintiff's (<u>see</u> Tr. 202-18)), the SSA has amended 20 C.F.R. § 404.1504 and rescinded SSR 06-03p. <u>See</u> 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). The new regulation states that the SSA "will not provide <u>any</u> analysis in

20

[its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits," but "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in your claim." 20 C.F.R. § 404.1504 (emphasis added). Coordinately, in rescinding SSR 06-03p, the SSA noted that, for claims filed on or after March 27, 2017, ALJs "will not provide <u>any</u> articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is <u>inherently neither valuable nor persuasive</u>." 82 Fed. Reg. 15263-01 (emphasis added).

Following the enactment of the new regulation, a split of authority developed among the district courts within the Fourth Circuit regarding the continued applicability of <u>Woods</u> (and related Fourth Circuit cases) to claims filed on or after March 27, 2017, <u>compare</u> <u>Pizarro v. Kijakazi</u>, No. 5:21CV46, 2022 WL 966823, at *4 (E.D.N.C. Mar. 30, 2022) (unpublished) (deeming <u>Bird</u> "substantial weight" standard no longer applicable to claims filed on or after March 27, 2017), <u>Rogers v. Commissioner of Soc. Sec.</u>, No. 3:20CV206, 2022 WL 135310, at *3 (W.D.N.C. Jan. 13, 2022) (unpublished) (same, <u>aff'd</u>, 62 F.4th 872 (4th Cir. 2023), <u>Yonnes S. v. Saul</u>, No. 1:20CV819, 2021 WL 2767298, at *9 (E.D. Va. Mar. 31, 2021) (unpublished) (same), <u>and Johnson v. Saul</u>, C.A. No. 6:19-

1155, 2020 WL 6265092, at *3 (D.S.C. June 3, 2020) (unpublished) (same), recommendation adopted, 2020 WL 5810523 (D.S.C. Sept. 30, 2020) (unpublished), with Carter v. Kijakazi, No. 1:20CV252, 2021 WL 3915009, at *4 (M.D.N.C. Sept. 1, 2021) (unpublished) (Peake, M.J.) (holding that, because "[t]he Fourth Circuit ha[d] not reconsidered [Woods and other similar cases] since the SSA's 2017 revisions, [those cases] therefore remain[ed] in full force"), recommendation adopted, 2021 WL 4412374 (M.D.N.C. Sept. 27, 2021) (unpublished) (Osteen, Jr., J.), VanCleave v. Saul, No. 1:20CV144, 2021 WL 2078004, at *3 (W.D.N.C. May 24, 2021) (unpublished) (same), and Rose v. Saul, No. 7:19CV91, 2020 WL 4740479, at *3-4 (E.D.N.C. Aug. 14, 2020) (unpublished) (same).

The Fourth Circuit has now squarely addressed the continued applicability of the relevant holding in Woods and related cases to claims filed on or after March 27, 2017. In Rogers, that court held as follows:

> . . . [T]he [] ALJ acknowledged the VA's determination that [the plaintiff wa]s 100% disabled and observed that it could 'never be entitled to controlling weight,' [but t]he ALJ nonetheless gave some consideration to the VA's determination, as the ALJ commented — without elaboration or explanation — that it was 'only partly persuasive.' The ALJ thereby complied with the new SSA rules, under which the VA's determination could have been disregarded[, b]ut the ALJ disobeyed our precedents, as they would have required much more consideration and discussion of the VA's determination and a detailed justification for not according it substantial weight.
>
> . . .

22

At bottom, if our . . . *Woods* [and similar] precedents remain controlling as to SSA claims (like [the plaintiff]'s) filed on or after March 27, 2017, the SSA ALJ was required to consider and thus also discuss the VA's determination that [the plaintiff] is 100% disabled. In such a situation, the ALJ was obliged to accord substantial weight to the VA's disability determination unless the record before the ALJ clearly showed that some lesser weight was appropriate. And the ALJ could demonstrate the appropriateness of according some lesser weight only by stating persuasive, specific, and valid reasons for doing so that found support in the record. If, however, the new SSA rules abrogate our precedents as to claims filed on or after March 27, 2017, the ALJ was not required to consider — much less discuss or accord any weight to — the VA's disability determination. Rather, the ALJ merely had to consider any evidence underlying the VA's disability determination that [the plaintiff] submitted in support of her SSA claim.

Consequently, we are called upon to decide today whether our precedents or the new SSA rules apply to claims filed on or after March 27, 2017. As did the district court, we look to the Supreme Court's 2005 [*National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005),] decision to resolve that issue. Specifically, we utilize the standard outlined in *Brand X* for determining whether "[a] court's prior judicial construction of a statute trumps an agency construction."

Pursuant to the *Brand X* standard, we must assess whether our precedents "hold[ ] that [their] construction follows from the unambiguous terms of the [ Act] and thus leaves no room for agency discretion." Quite clearly, our precedents do not so hold. And that makes sense, in that the Act itself does not address how or even if the SSA must deal with another agency's disability determination.

Next, then, we assess under the *Brand X* standard whether the new SSA rules are "otherwise entitled to [] deference [under *Chevron, U.S.A., Inc. v. National Res. Def. Council, Inc.*, 467 U.S. 837 (1984)]." Where, as here, "the statute is silent or ambiguous with respect to the specific issue," *Chevron* identifies "the question for the court" as being "whether the agency's answer is based on a permissible construction of the statute."

. . .

23

[The plaintiff] has not offered a cogent basis for withholding *Chevron* deference from the new SSA rules, and we perceive none. The new rules are a type that Congress empowered the SSA Commissioner to adopt, they are not manifestly contrary to any provision of the . . . Act, and they do not strike us as arbitrary and capricious in any way. Notably, it matters not that the new rules constitute a reversal of prior SSA directives, for as *Brand X* explains, "[a]gency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework." So long as "the agency adequately explains the reasons for a reversal of policy" — as the SSA plainly has done here — "change is not invalidating, since the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency."

In these circumstances, we are constrained to conclude under *Brand X* that <u>our precedents do not trump the new SSA rules</u>. That is, we agree with the district court that <u>the new rules supersede our precedents and thus apply to claims filed on or after March 27, 2017.</u> We also must agree that <u>the [] ALJ applied correct legal standards and committed no error in adhering to the new rules and declining to accord substantial weight to the VA's determination that [the plaintiff] is 100% disabled.</u>

<u>Rogers</u>, 62 F.4th at 874-80 (emphasis added) (footnote and internal citations omitted).

Accordingly, even if the record before the ALJ had included Plaintiff's favorable state agency disability decision, pursuant to the applicable version of Section 404.1504, the ALJ would have had no duty to "provide <u>any</u> analysis in [his] determination or decision about [that state agency disability] decision," 20 C.F.R. § 404.1504 (emphasis added), and the Court need only determine whether the ALJ "consider[ed] all of the supporting evidence underlying the [state agency]'s decision that [the ALJ] receive[d] as evidence in [Plaintiff's] claim," <u>id.</u> Here, the ALJ's decision

24

makes clear that he considered all evidence in the record, including records post-dating the state agency's disability decision on June 23, 2021, and continuing through September 30, 2021, just five days prior to the hearing. (See Tr. 15-21; see also Tr. 967-68, 1049-51, 1076-80, 1170-73, 1194-1216, 1232-35, 1273-76, 1283-1318.)

Because Section 404.1504 requires nothing more of the ALJ, Plaintiff's fifth assignment of error fails to warrant relief.

### 6. Assistive Device

Plaintiff additionally maintains that "there is substantial proof of Plaintiff[']s use of the cane and walker are [sic] needed." (Docket Entry 14 at 2; see also Docket Entry 21 at 3 ("The ALJ committed reversible error by failing to properly consider [Plaintiff]'s assistive device.").) More specifically, Plaintiff faults the ALJ for "disount[ing] the use of the cane on the grounds that [Plaintiff's primary care physician] Dr. [Addison D.] Zhang previously opined an assistive device was not medically necessary (in his [sic] medical source statement dated April 20, 2020 [('2020 MSS')]),'' but that "[t]he ALJ fail[ed] to acknowledge that Dr. Zhang updated her opinion as of June 2021 [('2021 MSS')] finding an assistive device was medically necessary citing [Plaintiff's] back condition had progressed." (Docket Entry 21 at

Case 1:22-cv-00473-LPA   Document 25   Filed 08/23/23   Page 25 of 48

3 (space added).)[7]  Plaintiff further objects to the ALJ's "generic[] state[ment that] use of the cane [wa]s not supported by [Plaintiff's] providers[']s own treatment notes" (id. (internal quotation marks omitted)), as well as "[t]he ALJ['s] fail[ure] to take note of the physical exam findings noting significant limitations," "a prescription for a rolling walker," and "[a]n updated MRI dated June 2021 show[ing] worsening [degenerative disc disease] at all levels [–] cervical, thoracic and lumbar" (id.).

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *7 (July 2, 1996) (emphasis added) ("SSR 96-9p").  Moreover, "the legal issue does not turn on whether a cane was 'prescribed' . . . but whether a cane was 'medically required.'"  Spaulding v. Astrue, 379 F. App'x 776, 780 (10th Cir. 2010).  As detailed below, the ALJ did not err in

_____

[7] Although Plaintiff asserted that "Dr. Zhang updated her opinion again [on February 7, 2023]" and directed the Court to "[s]ee attached" (Docket Entry 21 at 3), the Court could not locate any such opinion from Dr. Zhang in Plaintiff's materials (see Docket Entries 2, 14, 21-23).

finding that Plaintiff's cane/walker use did not qualify as medically necessary.

The ALJ provided the following analysis of the medical necessity of Plaintiff's cane and/or walker:

> Use of an assistive device has been considered, as provided by SSR 96-9p; however, the longitudinal record does not support the medical need for such a device.
>
> . . .
>
> Th[e 2021 MSS] is similar to the [2020 MSS (which the ALJ found "not persuasive" (Tr. 20));] however, <u>notably, th[e 2021 MSS] indicates that a cane is medically necessary. This is in contrast to the provider[']s own treatment notes</u>, which does [sic] not support the need for a cane and are typically unremarkable except for some noted lower back pain and/or abdominal pain, and no indication of any gait abnormality or assistive device being utilized for ambulation or otherwise (e.g., generally [(Tr. 437, 454-55, 457-58, 474, 488, 493, 504, 612, 894-95, 906, 915-16, 933, 942, 991, 1197] (although noting lower extremity weakness secondary to pain)[)]. The lack of consistency between the [2021 MSS] and the provider's own documented examinations across the longitudinal record lessens the persuasiveness of the [2021 MSS]. The [2021 MSS] is also <u>inconsistent with the overall whole record</u>, as otherwise discussed. Accordingly, the [2021 MSS] is generally found to be <u>unpersuasive</u>.

(Tr. 18-21 (emphasis added).)

That analysis by the ALJ defeats Plaintiff's contention that "[t]he ALJ fail[ed] to acknowledge that Dr. Zhang updated her opinion [in the 2021 MSS] finding an assistive device was medically necessary citing [Plaintiff's] back condition had progressed" (Docket Entry 21 at 3). Quite to the contrary, the ALJ not only acknowledged Dr. Zhang's opinion regarding the medical necessity of Plaintiff's cane in the 2021 MSS, the ALJ expressly found the

27

opinion "unpersuasive" (Tr. 21), and provided specific reasons for that finding, including multiple citations to Dr. Zhang's "typically unremarkable" treatment notes (id. (citing Tr. 437, 454-55, 457-58, 474, 488, 493, 504, 612, 894-95, 906, 915-16, 933, 942, 991, 1197)).

Those citations to Dr. Zhang's treatment notes, as well as the ALJ's finding that the 2021 MSS also lacked consistency with the overall record, as earlier discussed in the ALJ's decision (see Tr. 21), similarly undermine Plaintiff's assertion that "[t]he ALJ fail[ed] to take note of the physical exam findings noting significant limitations," "a prescription for a rolling walker," and "[a]n updated MRI dated June 2021 show[ing] worsening [degenerative disc disease] at all levels [-] cervical, thoracic and lumbar" (Docket Entry 21 at 3). Earlier in the decision, the ALJ discussed both the normal and the abnormal findings in Plaintiff's physical examinations (see Tr. 16-21), as well as the June MRI (see Tr. 17 ("An MRI of the entirety of the spine (cervical through lumbar) was completed in June 2021 [and] noted degenerative disease without any central cord or nerve root involvement." (internal parenthetical citation omitted) (citing Tr. 1195)); see also Tr. 948 (pain management physician's interpretation of June 2021 MRI as showing "mild degenerative changes [in the cervical spine] that would not necessarily be ca[u]se for neck or arm pain," "some disc bulges without canal

28

stenosis" in the thoracic spine, and "mild facet hypertrophy" with "no significant [neural foraminal stenosis]" in the lumbar spine (emphasis added))). Moreover, although the ALJ did not expressly note Dr. Zhang's June 2021 prescription of a walker for Plaintiff (see Tr. 16-21; see also Tr. 1195 (reflecting Dr. Zhang's statements that "[Plaintiff] will benefit from using a walker" and "[p]rescription provided," in setting of Plaintiff's subjective report of "fall[ing] multiple times" (Tr. 1196)), as discussed above, "the legal issue does not turn on whether a cane was 'prescribed' . . . but whether a cane was 'medically required,'" Spaulding, 379 F. App'x at 780.

Simply put, Plaintiff has not established that the ALJ erred in finding Plaintiff's cane and/or walker not medically necessary.

### 7. Age Discrimination

Plaintiff next argues "that he has been discriminated against due to th[e] statement that [the ALJ] made" that "Plaintiff was young for [S]ocial [S]ecurity benefits." (Docket Entry 14 at 2.) In Plaintiff's view, "[he] should not be discriminate [sic] against due to age, race, sex, disability or sexual orientation," because "[n]o one can know the future or how things happen or when[, s]o for [the ALJ] to say [] Plaintiff is too young is discrimination [sic]." (Id. at 2-3; see also id. at 3 ("No one knows when he or she will become disabled. No one should be judged for their

29

disability due to age, race, sex, disability, sexual orientation or age of their disability.").)

The Court "must start . . . from the presumption that [ ALJs ] are unbiased." Schweiker v. McClure, 456 U.S. 188, 195 (1982). Plaintiff may rebut that presumption "by a showing of conflict of interest or some other specific reason for disqualification," id.; however, "a plaintiff alleging ALJ bias bears a 'heavy burden' of proof," Warren v. Colvin, No. 4:14CV2517, 2015 WL 5673118, at *2 (D.S.C. Sept. 25, 2015) (unpublished) (quoting Simpson v. Macon Cnty., N.C., 132 F. Supp. 2d 407, 411 (W.D.N.C. 2001) (unpublished)). Moreover, "'[c]onclusory allegations and speculation are not enough to support a finding that the ALJ was biased.'" Harris v. Colvin, No. 1:14CV1005, 2016 WL 698083, at *9 (M.D.N.C. Feb. 19, 2016) (unpublished) (quoting Wright v. Colvin, No. 12-21773-CIV, 2014 WL 3400978, at *8 (S.D. Fla. July 11, 2014) (unpublished)), recommendation adopted, slip op. (M.D.N.C. Mar. 31, 2016 (Schroeder, J.).

Plaintiff's allegations that the ALJ discriminated against Plaintiff on the basis of his age fall far short of rebutting the presumption of the ALJ's impartiality. Significantly, neither the ALJ's decision nor the certified hearing transcript reflect any statements by the ALJ describing Plaintiff as "too young" for disability benefits (see Tr. 7-23, 39-74). Furthermore, to the extent Plaintiff's instant argument relies on the ALJ's finding in

30

the decision that lists Plaintiff's birth date and age, as well as notes that applicable regulations "defined [Plaintiff] as a younger individual age 18-49 on the alleged disability onset date" (Tr. 21 (citing 20 C.F.R. § 404.1563)), as the Commissioner points out, "[t]he ALJ appropriately considered Plaintiff's chronological age as required by the regulations" (Docket Entry 17 at 23 (citing 20 C.F.R. § 404.1563(a) ("When [the SSA] decide[s] whether [a claimant] is disabled . . ., [the SSA] will consider [the claimant's] chronological age in combination with [his or her RFC], education, and work experience." (emphasis added)))).

The ALJ thus did not err (let alone discriminate against Plaintiff) by considering Plaintiff's chronological age in combination with other required vocational factors in rendering a disability decision and, therefore, this assignment of error falls short.

### 8. New Evidence

Plaintiff has submitted new evidence consisting of "prescriptions for [his] walker/cane, the doctor's notes for walker/cane, doctor notes that has [sic] kept [him] out of work since 2021 and surgery notes from [his T]arlov cyst surgery." (Docket Entry 21 at 1; see also Docket Entries 22, 23 (new evidence).) Plaintiff asks the Court to "take all th[at new evidence] in to [sic] consideration before making a decision." (Docket Entry 21 at 1.)

31

"[I]n determining whether the ALJ's decision is supported by substantial evidence, [this C]ourt cannot consider evidence which was not presented to the ALJ [or the Appeals Council]." Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996). Instead, the Court can remand the case under sentence six of 42 U.S.C. § 405(g)[8] for the Commissioner to consider the new evidence, if Plaintiff can satisfy the following four requirements:

> First, the claimant must demonstrate that the new evidence is relevant to the determination of disability at the time the claimant first applied for benefits and is not merely cumulative of evidence already on the record. Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985) (citing Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983)). Second, the claimant must establish that the evidence is material, in that the Commissioner's decision "'might reasonably have been different' had the new evidence been before her." Id. (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). Third, the claimant must show that good cause exists for her failure to present the evidence earlier. Id. And fourth, the claimant must present to the reviewing court "'at least a general showing of the nature' of the new evidence." Id. (quoting King, 599 F.2d at 599).

Finney v. Colvin, 637 F. App'x 711, 715-16 (4th Cir. 2016). The Court will not order a sentence six remand, because Plaintiff has failed to show that the new evidence qualifies as material.

The new evidence consists of 1) a "To Whom [I]t May Concern" note from Cynthia Armster, PA-C, dated June 23, 2021, stating that Plaintiff "[wa]s seen in [Ms. Armster's] office for a medical issue

---

[8] Sentence six of 42 U.S.C. § 405(g) provides that a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

that [wa]s going to keep [Plaintiff] out of work from until [sic] July 8th" (Docket Entry 22 at 1); 2) a "To Whom [I]t May Concern" note from Ms. Armster dated January 14, 2022, stating that Plaintiff "ha[d] a medical issue that [wa]s going to keep [him] out of work until [February 21, 2022]" (id. at 2); 3) an order for a "[w]alker w[ith] wheels" for Plaintiff signed by Dr. Zhang on June 24, 2021 (id. at 3); 4) operative notes from Plaintiff's Tarlov cyst surgery on April 27, 2022, performed by Dr. Frank Feigenbaum (id. at 4-12); and 5) treatment notes from an appointment with rheumatologist Dr. Abigail L. Gilbert on February 21, 2023 (Docket Entry 23), diagnosing Plaintiff with "[a]xial spondyloarthritis" and prescribing Cosentyx (id. at 4).

The "To Whom [I]t May Concern" notes lack materiality, because they neither identify the "medical issue" that kept Plaintiff out of work, nor explain why such medical issue would prevent Plaintiff from performing any substantial gainful activity. (Docket Entry 22 at 1-2.) Moreover, opinions that a claimant cannot work do not merit "any special significance" as they address an "issue[] reserved to the Commissioner," 20 C.F.R. § 404.1527(d) ("Opinions on some issues, such as [opinions that a claimant qualifies as disabled or deem him or her unable to work] are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or

decision of disability. . . . [The SSA] will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . .”). See Cale T. M. v. Saul, No. 3:20CV70, 2021 WL 3560229, at *12 (E.D. Va. July 22, 2021) (unpublished) (finding new evidence lacked materiality where physical therapist’s “report made general comments about [the p]laintiff’s employability, which [wa]s an issue reserved for the Commissioner” (internal quotation marks omitted)), recommendation adopted, No. 3:20CV70, 2021 WL 3561223 (E.D. Va. Aug. 11, 2021) (unpublished). Dr. Zhang’s walker prescription (id. at 3) does not qualify as material because, as discussed above, inclusion of Plaintiff’s alleged use of a cane/walker in the RFC turns on its medical necessity and not the fact that a medical provider prescribed it, see Spaulding, 379 F. App’x at 780, and the ALJ here did not err in finding Plaintiff’s cane/walker not medically necessary.

Dr. Feigenbaum’s operative notes dated April 27, 2022 (Docket Entry 22 at 4-12), and Dr. Gilbert’s treatment notes dated February 21, 2023 (Docket Entry 23), also fail to meet the materiality standard. Dr. Feigenbaum’s operative notes do not qualify as material, because (A) they post-date the ALJ’s decision by over three months, see Brande v. Kijakazi, No. 1:21CV48, 2022 WL 3646002, at *4 (M.D.N.C. Aug. 24, 2022) (unpublished) (Peake, M.J.) (“Implicit in the requirement of materiality is the requirement that the new evidence [] relate to the time period previously

34

considered by the ALJ."), recommendation adopted, 2022 WL 4386711 (M.D.N.C. Sept. 22, 2022) (unpublished) (Biggs, J.), appeal dismissed, No. 22-2197, 2023 WL 3568169 (4th Cir. Jan. 30, 2023) (unpublished), and, more significantly, (B) they merely describe the procedures Dr. Feigenbaum performed on Plaintiff's Tarlov cysts. (See Docket Entry 22 at 4-12.) Significantly, the operative notes do not contain any description of Plaintiff's post-surgical recovery, the effectiveness of the procedures, or functional limitations remaining after the procedures. (See id.) Dr. Gilbert's notes, in turn, post-date the ALJ's decision by over one year (see Docket Entry 23 at 4), reflect treatment by a new provider in a new area of medicine, i.e., rheumatology (see id.), and contain a new diagnosis for Plaintiff, i.e., "[a]xial spondyloarthritis" (id.), based on new complaints of "knots in multiple locations including [Plaintiff's right] palm, wrist, and bottom of feet" (id. at 2), as well as a new course of treatment, i.e., "Cosentyx" (id. at 4). Those circumstances preclude a finding that Dr. Gilbert's notes relate back to the period prior to the ALJ's decision. See Campbell v. Astrue, No. 2:11CV563, 2013 WL 1213057, at *8 (E.D. Va. March 1, 2013) (unpublished) ("New evidence must relate to the determination of disability at the time the application was first filed, or at least before the ALJ renders his decision, and it must not contain evidence of a later-acquired

35

disability or of the subsequent deterioration of the previously non-disabling condition.").

In sum, Plaintiff has not demonstrated the new evidence satisfies the requirements for a sentence six remand.

### 9. Mental RFC

In Plaintiff's ninth issue on review, he maintains that "[t]he ALJ's decisional findings do not match the assigned RFC and this constitutes error under SSR 96-8p." (Docket Entry 21 at 2.) In particular, Plaintiff notes that, "[w]ith respect to the [paragraph] B-criteria used at the second and third steps in the [SEP], the ALJ found [Plaintiff] had limitations in interacting with others; sustaining concentration [('CPP')]; and understanding [and] remembering instructions," but that "[t]he [RFC] . . . is silent on th[o]se areas of function." (Id.)[9] Plaintiff further faults the ALJ for failing to conduct a function-by-function assessment of Plaintiff's ability to engage in mental work-related activities in violation of SSR 96-8p. (Id.)

The Fourth Circuit, in finding that an ALJ failed to account for the claimant's moderate limitation in CPP in the RFC, held in Mascio that "the ability to perform simple tasks differs from the

_____

[9] Although Plaintiff does not specify the degree of limitation found by the ALJ in the paragraph B criteria (see Docket Entry 21 at 2), the decision reflects that the ALJ found Plaintiff had "mild limitation" in "understanding, remembering or applying information" (Tr. 13 (emphasis added)), "interacting with others" (Tr. 14), and "[CPP]" (id.), and "no limitation" in "adapting and managing oneself" (id. (emphasis added)) and thus found Plaintiff's depression and anxiety "non-severe" (id. (emphasis added)).

36

ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in [CPP] at step three does not translate into a limitation in [her RFC]." (emphasis added)).

Furthermore, it remains unclear whether Mascio applies to mild as opposed to moderate limitations, and to limitations in broad functional areas other than CPP. See Britt v. Saul, 860 F. App'x 256, 262 n.3 (4th Cir. 2021) ("It is unclear whether an [ALJ] must specifically address a claimant's mild impairment in [CPP] in the [RFC] analysis."). Although some cases exist where a court remanded for an ALJ's failure to adequately account for mild limitations in the broad areas of functioning, see McMichael v. Colvin, No. 1:15CV528, 2016 WL 4556768, at *2-6 (M.D.N.C. Aug. 31, 2016) (Webster, M.J.) (CPP), recommendation adopted, slip op. (M.D.N.C. Sept. 29, 2016) (Schroeder, J.); Ashcraft v. Colvin, No.

3:13CV417, 2015 WL 9304561, at *6-11 (W.D.N.C. Dec. 21, 2015) (unpublished) (daily activities, social functioning, and CPP), many cases exist to the contrary, see *Finley v. Kijakazi*, No. 4:22CV1098, 2023 WL 3089922, at *7 (D.S.C. Apr. 26, 2023) (unpublished) ("There is no Fourth Circuit Court of Appeals case finding that 'mild' limitations in CPP must be explained in the RFC; *Mascio* itself related to 'moderate' limitations and 'severe' mental impairments."); *Byrd v. Kijakazi*, No. 5:21CV527, 2023 WL 2769505, at *6 (E.D.N.C. Jan. 31, 2023) (unpublished) ("[T]he holding in *Mascio* . . . that an ALJ must account for a claimant's *moderate* limitations in [CPP] in the RFC or explain why no limitation is necessary, has not been extended by the Fourth Circuit to *mild* limitations in this functional area . . . ." (emphasis in original)), recommendation adopted, 2023 WL 2760058 (E.D.N.C. Mar. 31, 2023) (unpublished); *Carol H. v. Kijakazi*, No. 5:20CV35, 2021 WL 3561241, at *12 (W.D. Va. Aug. 12, 2021) (unpublished) ("[I]mportantly, a 'moderate' limitation is greater than a 'mild' limitation, and the Fourth Circuit has not decided whether to extend *Mascio* to those instances in which an ALJ identifies only 'mild' mental limitations . . . ."), recommendation adopted, 2021 WL 4027199 (W.D. Va. Sept. 3, 2021) (unpublished); *Martin v. Saul*, No. 9:18CV3172, 2020 WL 2813788, at *8 (D.S.C. Jan. 16, 2020) (unpublished) (noting that "most district court decisions [in the Fourth Circuit] have found to the contrary [of *Ashcraft*]"),

38

recommendation adopted, 2020 WL 1329395 (D.S.C. Mar. 23, 2020) (unpublished); Morrison v. Berryhill, No. 1:16CV337, 2018 WL 1311207, at *5 (W.D.N.C. Feb. 8, 2018) (unpublished) (deeming "[the p]laintiff's heavy reliance on Mascio . . . misplaced" and noting that, since "about a month after the Mascio decision," many cases in the Western District of North Carolina "have held that the requirements of Mascio do not necessarily apply where a plaintiff is found to have *mild* limitations in CPP" (emphasis in original)), recommendation adopted, 2018 WL 1308139 (W.D.N.C. Mar. 13, 2018) (unpublished); Thorp v. Berryhill, No. 3:16CV70, 2018 WL 325318, at *3 (W.D.N.C. Jan. 8, 2018) (unpublished) (holding that "case differ[ed] markedly from Mascio," because the plaintiff "had mild difficulties maintaining [CPP]" (emphasis added)); Williamson v. Berryhill, No. 7:16CV284, 2017 WL 4293408, at *5 (E.D.N.C. Sept. 27, 2017) (unpublished) (deeming the "plaintiff's reliance on Mascio [] inapt," where ALJ found "only *mild* limitations in activities of daily living, social functioning, or CPP" (emphasis in original)); Franklin v. Berryhill, No. 1:16CV211, 2017 WL 4274190, at *2-3 (W.D.N.C. Sept. 26, 2017) (unpublished) ("This [c]ourt does not interpret Mascio's holding as applying to all restrictions."); Gilbert v. Berryhill, No. 5:16CV100, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (unpublished) ("As this case concerns only 'mild difficulties,' it does not trigger the RFC discussion requirements of Mascio per se." (emphasis added)

39

(internal quotation marks omitted)); <u>Guest v. Colvin</u>, No. 1:15CV776, 2016 WL 4007612, at *6 (M.D.N.C. July 26, 2016) (unpublished) (expressing "doubt [] as to whether <u>Mascio</u>'s holding with regards to [CPP] should apply to" a case involving <u>mild</u> limitations in social functioning, "particularly given that the Fourth Circuit made clear its CPP-based holding rested on the distinction between the ability to perform simple tasks and the ability to stay on task, and such a distinction does not clearly apply in the social functioning context" (internal citation omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 24, 2016) (Schroeder, J.); <u>Thompson v. Colvin</u>, No. 1:15CV234, 2016 WL 3610161, at *3 (W.D.N.C. July 1, 2016) (unpublished) ("The [c]ourt does not read <u>Mascio</u> to impose a duty on ALJs to automatically or necessarily account for <u>mild</u> limitations in the RFC." (emphasis added)).

The Court finds particularly persuasive a decision from another member of this Court which well-explained the reasoning behind declining to extend <u>Mascio</u> to <u>mild</u> limitations in the broad functional areas:

> [T]he ALJ made these findings [of mild limitation in CPP] in the course of her discussion at step two of the [SEP], in which she found that [the p]laintiff's mental impairment of depression does not cause more than minimal limitation in the [plaintiff]'s ability to perform basic mental work activities and is therefore nonsevere. This analysis differs from the typical <u>Mascio</u> scenario, in which the ALJ, having already identified one or more mental impairments as severe at step two, then performs a step three evaluation as to whether the degree of

40

> functional limitation resulting from [the p]laintiff's
> mental impairment(s) meets or equals a listed impairment.
> In that scenario, the resulting <u>Mascio</u> challenge stems
> from the ALJ's failure, or alleged failure, to include
> limitations from the [plaintiff's] severe impairments in
> the RFC.
>
> This distinction is significant. "Basic work activities"
> are defined as functions such as walking, standing,
> sitting, lifting, pushing, pulling, reaching, carrying,
> handling, seeing, hearing, speaking, understanding,
> carrying out and remembering simple instructions, using
> judgment, responding appropriately to co-workers and
> supervisors, and dealing with changes in a routine work
> setting. 20 C.F.R. § 404.1522(b). Here, the ALJ found
> that [the p]laintiff's mental impairment of depression
> was nonsevere, meaning that it does not cause more than
> minimal limitation in his ability to perform basic mental
> work activities. Thus, the ALJ explained why there was
> no mental limitation in [the p]laintiff's RFC, based on
> the ALJ's determination that [the p]laintiff's mental
> impairment did not affect his ability to perform basic
> work activities. In the circumstances, [the p]laintiff's
> <u>Mascio</u> challenge is without basis.

<u>Brownlee v. Saul</u>, No. 1:18CV642, 2019 WL 3858652, at *7 (M.D.N.C.
Aug. 16, 2019) (unpublished) (Peake, M.J.) (certain internal
citations, brackets, and quotation marks omitted), <u>recommendation
adopted</u>, 2019 WL 4723257 (M.D.N.C. Sept. 26, 2019) (unpublished)
(Osteen, J.). Thus, the weight of post-<u>Mascio</u> authority among the
district courts in the Fourth Circuit does not favor extending
<u>Mascio</u> to <u>mild</u> limitations in the broad functional areas.

Moreover, even assuming <u>Mascio</u> applies to 1) <u>mild</u> limitations
in the broad areas of functioning (i.e., the lowest of four levels
above "none"), and 2) functional areas other than CPP, Plaintiff
has not shown prejudicial error here. First, Plaintiff does not
suggest what additional limitations the ALJ should have included in

41

the RFC to account for his _mild_ limitations in understanding, remembering or applying information, interaction with others, and CPP. (_See_ Docket Entry 21 at 2; _see also_ Docket Entries 2, 14.) That failure precludes relief. _See Carol H._, 2021 WL 3561241, at *13 (rejecting the plaintiff's argument that ALJ failed to account for mild mental limitations in RFC, where the plaintiff "did not explain what functional limitations [the] ALJ [] should have included in the RFC or discuss why any mental limitations were warranted in light of the record as a whole"); _Humphries v. Colvin_, No. 3:15CV376, 2016 WL 8223429, at *5 (W.D.N.C. Oct. 17, 2016) (unpublished) (declining relief on similar claim where "it d[id] not appear that [the p]laintiff [wa]s actually alleging based on contradictory evidence in the record that she ha[d] limitations that [we]re not addressed by the RFC; rather, she [wa]s simply arguing that her 'at most, _mild_ limitations' [we]re cause for remand because the ALJ's decision d[id] not apply the same analysis the Fourth Circuit [in _Mascio_] would require for review of 'moderate' limitations in [CPP]" (emphasis added)), _recommendation adopted_, 2017 WL 525666 (W.D.N.C. Feb. 8, 2017) (unpublished).

Second, the ALJ's step two evaluation cites to substantial evidence to support the lack of mental restrictions in the RFC. The ALJ provided the following analysis to support his findings of _mild_ limitation in understanding, remembering or applying information, interaction with others, and CPP:

The first functional area is understanding, remembering or applying information. In this area, [Plaintiff] has <u>mild</u> limitation. [Plaintiff]'s function report indicates he needs reminders for medications. However, he has been described him [sic] to have normal memory and as able to follow 3 step commands. The available evidence supports no more than <u>mild</u> limitation to functioning in this domain.

The next functional area is interacting with others. In this area, [Plaintiff] has <u>mild</u> limitation. In [Plaintiff]'s function report, there were denials of any social activities. However, it was noted that he did not have any problems getting along with others. Accordingly, the evidence supports no more than <u>mild</u> limitation to functioning in this domain.

The third functional area is [CPP]. In this area, [Plaintiff] has <u>mild</u> limitation. It was reported that [Plaintiff] cannot pay attention long due to pain and notes he does not finish what he starts. However, an examination from October 2019 notes his attention and concentration was normal. In addition, an examination from November 2020 indicates he had normal attention span. Considering the available evidence and allegations made in the function report, [Plaintiff] has no more than <u>mild</u> limitation to functioning in this domain.

. . .

Because [Plaintiff]'s medically determinable mental impairments cause no more than "<u>mild</u>" limitation in any of the functional areas <u>and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff]'s ability to do basic work activities</u>, they are <u>non-severe</u>.

(Tr. 13-14 (internal parenthetical citations omitted) (emphasis added); <u>see also</u> Tr. 20 (noting that Dr. Zhang's "overall finding that [<u>Plaintiff's] mental impairments would not limit his functioning as it relates to his mental [RFC</u> ] is consistent with the complete record that typically shows normal psychiatric findings" (emphasis added)).)

The above-quoted discussion clarifies why, notwithstanding finding Plaintiff <u>mildly</u> limited in understanding, remembering or applying information, interacting with others, and CPP, the ALJ did not include mental limitations in the RFC. See <u>Britt</u>, 860 F. App'x at 262 ("The discussion in step-two that the[] limitations [from non-severe impairments] had a minimal impact on vocation and were being managed tells us what impact these limitations had in the [RFC] analysis. We can conduct a meaningful review without making an [ALJ] repeat himself."); <u>Ramona A. v. Kijakazi</u>, No. 5:20CV66, 2022 WL 993559, at *6 (W.D. Va. Mar. 31, 2022) (unpublished) ("The ALJ considered whether [the plaintiff]'s anxiety caused functional limitation[ and ] found that [the plaintiff]'s non-severe anxiety caused 'no more than "mild" limitation in any of the functional areas <u>and</u> the evidence d[id] not otherwise indicate that there [wa]s more than a minimal limitation in [her] ability to do basic work activities.' Thus, it is a misreading of the ALJ's decision to assert that her step two determination found functional limitations that should have been included in the RFC." (emphasis in original) (internal parenthetical citation omitted)).

Plaintiff's challenge to the ALJ's failure to conduct a function-by-function assessment of Plaintiff's ability to engage in mental work-related activities (<u>see</u> Docket Entry 21 at 2) fares no better. An ALJ need not discuss every piece of evidence in making an RFC determination, see <u>Reid v. Commissioner of Soc. Sec.</u>, 769

44

F.3d 861, 865 (4th Cir. 2014); however, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636-37. Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate

45

meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, the ALJ did not expressly assess Plaintiff's mental work-related abilities on a function-by-function basis (see Tr. 15-21); however, no basis for remand exists because, as discussed above, the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's depression and anxiety (A) caused mild limitations in three mental functional areas and qualified as non-severe impairments (see Tr. 13-14), but (B) did not result in specific mental limitations in the RFC (see Tr. 15).

In light of the foregoing analysis, Plaintiff's ninth issue on review fails as a matter of law.

### 10. Physical Function-by-Function Assessment

Lastly, Plaintiff argues that "[t]he ALJ failed to comply with SSR 96-8p in assessing [Plaintiff]'s RFC because [the ALJ] failed to conduct the required 'function-by-function' assessment." (Docket Entry 21 at 3.) More specifically, Plaintiff contends that the ALJ "d[id] not assess [Plaintiff]'s ability for pushing and pulling" (id.), and "failed to reconcile how [Plaintiff] can perform full range light work [which involves walking on and off for a total of six hours in an eight-hour workday] when the medical

46

evidence of record showed significant ambulation difficulties" (id. at 4).[10]

Those contentions fail, because Plaintiff has shown neither that the "ALJ fail[ed] to assess [Plaintiff]'s capacity to [push, pull, and walk], despite contradictory evidence in the record," nor that "other inadequacies in the ALJ's analysis frustrate meaningful review," Mascio, 780 F.3d at 636 (emphasis added) (internal quotation marks, brackets, and ellipsis omitted). Plaintiff has not pointed the Court to any evidence that he could not engage in pushing and pulling of 20 pounds occasionally and 10 pounds frequently (see Docket Entry 21 at 3-4; see also Docket Entries 2, 14), as required by the RFC's restriction to light work (see Tr. 15). See also 20 C.F.R. § 404.1567(b). Indeed, the ALJ rejected as "not persuasive" Dr. Zhang's opinion that Plaintiff's "ability to use [his] arms for . . . pushing[ and] pulling was 0-90 minutes per 8-hour day." (Tr. 20; see also Tr. 416 (portion of 2020 MSS containing that opinion).) With regard to walking, Plaintiff does not identify which portions of the record "showed significant ambulation difficulties" (Docket Entry 21 at 4; see also Docket Entries 2, 14) and, as explained in the context of Plaintiff's contentions regarding his cane/walker, the ALJ rejected as

---

[10] Plaintiff additionally argues that a full range of light work involves "the ability to lift and carry up to 25 [pounds] on a frequent basis and up to 50 [pounds] on an occasional basis." (Docket Entry 21 at 4.) Those weights and frequencies actually describe the requirements of medium work, see 20 C.F.R. § 404.1567(c), whereas light work entails lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently, see 20 C.F.R. § 404.1567(b).

47

"unpersuasive" (Tr. 21) Dr. Zhang's opinion that a cane/walker qualified as medically necessary (see Tr. 1213), noting that Dr. Zhang's "own treatment notes . . . d[id] not support the need for a cane and [we]re typically unremarkable except for some noted lower back pain and/or abdominal pain, <u>and no indication of any gait abnormality or assistive device being utilized for ambulation or otherwise</u> (e.g., generally [Tr. 437, 454-55, 457-58, 474, 488, 493, 504, 612, 894-95, 906, 915-16, 933, 942, 991, 1197)]" (Tr. 20-21 (emphasis added)).

In short, Plaintiff has not established that the ALJ committed prejudicial error under <u>Mascio</u> and SSR 96-8p.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is affirmed, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security or Remanding the Cause for a Rehearing (Docket Entry 14) is denied, and that judgment is entered dismissing this action with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 23, 2023